# 𝕽ichmond

JAMES A. PERKINSON V. JOHN S. PERSONS, ADM'R.

March 14, 1935.

Present, All the Justices.

The opinion states the case.

*Rixey & Rixey,* for the plaintiff in error.

*James E. Heath,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

John S. Persons, administrator of the estate of Mrs. Castine M. Persons, brought an action against James A. Perkinson for the wrongful death of the deceased which was occasioned by an automobile accident on Atlantic avenue, Virginia Beach. He obtained a verdict for $5,000, which the court has sustained.

Atlantic avenue runs approximately north and south. At

the point of accident the avenue is located just west of and parallel to the Atlantic ocean. The accident occurred near the entrance to the casino of Seaside Park. Across Atlantic avenue at this point is a large parking lot used by visitors at the beach and the park, to park their cars. Mrs. Persons attempted to cross Atlantic avenue from the east to the west side between street intersections. Perkinson testified that "there are always people in the street" at this point. Another witness testified that pedestrians usually cross the avenue at this point to reach the parked cars, when there is a crowd at the park. Still another witness testified that "the traffic was very heavy at the time." Under these conditions Mrs. Persons started across the avenue. She had proceeded about one-third of the way across in the direction of the parking station on the west side when she turned her head in the direction from which the car of Perkinson was coming. It was being driven on the left side of the street at the rate of about forty-five miles per hour and she was directly in its path. The vision of both Perkinson and Mrs. Persons was unobstructed, and when the car was some fifty to seventy-five feet from her she darted diagonally toward the west side of the street and as she did so, Perkinson turned his car in the same direction and when she was nearly across she was struck. The car not only ran over her body but Perkinson, in his excitement, backed the car over her, the wheels passing over her twice. She died of her injuries. The car skidded fifty-four feet before striking her. The witnesses say that the brakes were "screaming." He failed to check his speed in time to save her.

Perkinson had been drinking. An officer said he "stuttered." When pressed by the officer he said he did not know how much whiskey he had had. He testified that he had had two bottles of beer and not more than two highballs and that he took his last drink about 5:30 P. M. The accident occurred at 6:40 P. M.

The plaintiff in error earnestly contends that the verdict should be set aside and the judgment reversed because they are not supported by the evidence and in addition,

Mrs. Persons was guilty of contributory negligence which bars her recovery, as a matter of law. To decide these contentions will require us to look to the evidence. In discussing them we must bear in mind that unless the judgment of the trial court appears to be plainly wrong or is without evidence to support it, or that the court committed an error of law, we must affirm it.

Mr. Murray A. Foster, an attorney of Roanoke, Virginia, was an eyewitness to the tragedy. He testified on behalf of the plaintiff and from his testimony the verdict and judgment are supported. He stated that he and Mrs. Foster were returning to their hotel at Virginia Beach after a visit to the Cavalier Beach Club and were driving south on Atlantic avenue; that he observed the Perkinson car in his rear vision mirror, proceeding in the same direction and he pulled to the right and it passed him; that as the Perkinson car got in front of him, he saw a woman (Mrs. Persons) crossing the avenue from the east to the west side and she was one-third of the way across; that she attempted to run across diagonally and as she did so the Perkinson car which had been driven on the left side of the street changed its course and started to return to the right side and as Mrs. Persons was within five feet of the west curb she was struck and the wheels of the Perkinson car passed over her body.

Mr. Foster, in describing the details, stated that he was driving at the rate of from twenty to twenty-five miles per hour; that he observed Mrs. Persons in the street and observed the speed of Perkinson's car and that when he perceived the situation he brought his car to a complete stop about 100 feet from the point of accident. He also said that Perkinson was driving at the rate of forty-five miles per hour; that when he first saw Mrs. Persons she was about 200 feet away; that he observed the Perkinson car, which at that time was more than fifty feet ahead of him and traveling on the left of the center of the street and that he also observed that Mrs. Persons was directly in the path of Perkinson's car. He further testified that just as Mrs. Persons, who had been looking in this direction, started to

run from the path of Perkinson's car to the west side of the street Perkinson turned his car to his right and applied his brakes with a good deal of force but she was struck. This significant question and answer by Mr. Foster explains the accident: "And he didn't stay over there on the left side of the street longer than he should have in proper passing, did he?," to which Mr. Foster replied, "I think that is a matter of opinion, but if you want me to answer it, I will." Counsel for the defendant then said "go ahead" and Mr. Foster stated that Perkinson should have cut back, after passing him (Foster) sooner than he did.

We have no difficulty in arriving at the conclusion that the question of Perkinson's negligence, under the evidence, was one for the jury. In fact his main defense was not that he was free from negligence but that Mrs. Persons was guilty of contributory negligence as a matter of law, in attempting to cross the street at the particular place, because subsections 126 (a), (b), and (d) of Code Supp. 1932, section 2154, provide that pedestrians must cross streets at intersections "wherever possible," where they are given the right of way, and that they shall cross only at right angles and not diagonally.

There were seventeen instructions given the jury by the court. They properly submitted all of the issues. The application of the doctrine of the last clear chance was one theory upon which the plaintiff based his right to recover. The evidence justified the court in submitting an instruction on that doctrine. The testimony discloses that Perkinson could have seen Mrs. Persons standing in the street when she was still 150 feet, or more, away. The jury had the right to conclude that if he had seen her when he should have seen her he could have avoided running over her by using his brakes, which were in good condition, by reducing his speed, which he did not do until it was too late, or by seasonably turning back to his right side of the street after passing Mr. Foster's car. The jury could have reasonably concluded that he had a clear opportunity, in the exercise of ordinary care, to have taken one, or all of those

precautions, and if he had, Mrs. Persons would have been saved even though she were in a state of negligence in standing in, and crossing the street. Whether Perkinson should have discovered her peril sooner than he did, and whether he had a clear chance to save her in the exercise of ordinary care were matters for the jury and by their verdict these things have been decided adversely to the plaintiff in error. Such a finding has substantial evidence to support it. Our conclusion is that the evidence in this case justified the instruction on the last clear chance doctrine.

The case at bar is quite similar in its facts to the recent case of *Keeler* v. *Baumgardner,* 161 Va. 507, 171 S. E. 592. The main difference is that the accident in that case occurred at night, while here it occurred while it was still daylight. The doctrine of the last clear chance was applied in that case and the principles there apply here. See also *Roanoke Ry. & Elec. Co.* v. *Korb,* 155 Va. 296, 154 S. E. 550, and *Virginia Ry. & Power Co.* v. *Wellons,* 133 Va. 350, 112 S. E. 843.

Complaint is made of an instruction which was given defining the sudden emergency doctrine and applying it to the situation of peril in which Mrs. Persons was, at the time she was in the street. Under the evidence in this case, the instruction was justified.

The judgment is affirmed.

*Affirmed.*