**142**

### BLUE GEM DRESSES, Inc., v. FASHION ORIGINATORS GUILD OF AMERICA, Inc.

#### No. 158.

Circuit Court of Appeals, Second Circuit.

Dec. 13, 1940.

Mook & Goldman, of New York City (Milton D. Goldman, of New York City of counsel), for appellant.

Weisman, Celler, Quinn, Allan & Spett, of New York City (Melvin A. Albert, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

PER CURIAM.

■■ The grant of certiorari to review our decision in Fashion Originators Guild of America v. Federal Trade Commission, 2 Cir., 114 F.2d 80, was a foregone conclusion in view of our refusal to follow the First Circuit (Filene's Sons Co. v. Fashion Originators Guild, 1 Cir., 90 F.2d 556); it did not indicate any choice between the two. After full consideration we determined that the combination is unlawful; and while, pending appeal to the Supreme Court, we have discretion to stay a decree of our own, or refuse interlocutory relief based upon a decision such as this, we cannot see any adequate reason for exercising it here. The resultant of the conflicting interests surely does not favor the defendant; at worst it is neutral. An injunction will merely transfer from the defendant's members to the plaintiff those sales of dresses which it would have got but for the defendant's original intervention. What they lose, the plaintiff will gain; just as what the plaintiff has lost, they have gained before the injunction. We fail to see anything in this which should move us not to suspend a practice that we have found to be unlawful. Nor is the plaintiff's injury to be measured by those dresses which the retailers actually return under pressure from the defendant; it is impossible to know what sales the plaintiff would have made if the retailers had been free. Finally, as to its own injury all the defendant says is that an injunction "will seriously hamper its program." Clearly, this particular injunction will not do that, though it may well be that it will be followed by a number of others which collectively will. Even so we can see nothing to give us pause; the "program," though temporarily "hampered," can be set in operation again; all that is at stake is a modus vivendi until the Supreme Court acts. We are of course aware that the Board's decision and our own may prove wrong, but we cannot agree that they should count for nothing prima facie, or that they should not be enough to turn scales otherwise so evenly balanced. It is not necessary to discuss the defendant's excuse that it now advises its members to apply for design patents.

The order is reversed; the mandate will go down immediately; the defendant will be forthwith enjoined from "directing its members, 'cooperating' retailers, or others acting in concert with it not to purchase dresses made by the plaintiff, or to return dresses bought of the plaintiff because the defendant or any of its 'arbitration committees' have found them 'original' designs or patterns. Also from advising its members,

and others acting in concert with it, not to sell dresses to retailers doing business with the plaintiff."

Order reversed.